IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HUNTAIR, INC., | ) | Civil Action No. 07 C 6890 |
| | ) | |
| Plaintiff, | ) | The Honorable David H. Coar |
| | ) | |
| v. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| CLIMATECRAFT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

CLIMATECRAFT, INC.'S OPPOSITION TO
HUNTAIR'S MOTION TO STRIKE PLEADINGS

I.  **Introduction**

As directed by the Court, Defendant and Counterclaimant, ClimateCraft, Inc. ("ClimateCraft"), submits this Opposition to the Motion by Plaintiff and Counterclaim-Defendant, Huntair, Inc. ("Huntair"), to strike the portion of the amended pleading pertaining to Huntair's inequitable conduct and to deny ClimateCraft any opportunity to cure.

This opposition is organized in three sections. First, it sets forth a condensed version of the background facts known to date and a brief discussion of law supporting an inequitable conduct finding in this case. Second, the Opposition addresses Huntair's arguments regarding the sufficiency of the pleadings and urges that the motion be denied. Third, as an alternative in the event the Court determines that the currently pleaded defense and counterclaim is not adequately pleaded, ClimateCraft seeks leave of Court to correct any defects, and sets forth a specific proposal for an amended pleading, should the Court deem one necessary.

II.   **Huntair's Conduct Supports a Finding of Inequitable Conduct**

   A.   **Huntair Misrepresented and/or Withheld Material Knowledge of Prior Art**

When Huntair filed the patent application leading to issuance of the patents in suit, it did not file a routine patent application. It submitted a "Petition to Make Special" requesting expedited consideration of its application. Exh. A. The result of this is that Huntair was able to get responses from the PTO in a matter of a few weeks, rather than the usual several months (or even a year or more) that is more typical of patent prosecution.

To obtain a grant of its Petition to Make Special, Huntair did two things. First, it described the alleged infringement, which involved a company known as Clean-Pak. Second, it told the PTO it had done a search of the prior art[1]. Exh. B, Exh. C. Huntair claimed it "caused to be made a careful and thorough search of the prior art by a respected Washington search agent," Oster Decl., ¶ 6 (Exh. B), and that it "has a good knowledge of the pertinent prior art. Specifically, [Mr. Hopkins] has been working in the air handling industry for 19 years." *Id.*, ¶ 7. Mr. Hopkins confirmed his experience, said he was Huntair's Engineering Manager and noted that "Huntair is a leader in airflow management [in the] commercial/industrial air handling market[]." Hopkins Decl., ¶ 1 (Exh. C).

Mr. Hopkins then told the PTO that his "*invention goes against conventional wisdom pertaining to the use of multiple fans and spacing of multiple fans in air handling systems.*" Hopkins Decl., ¶ 2 (Exh. C). *This statement is false.* Huntair withheld from the PTO the existence of commercial, competitive air handling systems using multiple fans in closely-spaced relation being sold by AAON (the AAON device) and by Governair (the Governair device).

Huntair later provided some information about the AAON device to the PTO, but it did not provide all of the information that it had and it withheld key details in the process. *Cf.* Exh.

---

[1]   Ordinarily, a patent applicant is under no duty to search the prior art, although all applicants have a duty of candor to the PTO to tell the PTO of material prior art of which they are aware.

D-G (what AAON told Huntair is shown in Exh. D and F[2]; what Huntair told the PTO is shown in Exh. E and G). For example, in July, 2005, AAON explained to Huntair:

> The fifth reference is an AAON document entitled RL Feature Master-Feature Number showing different options available to customers from AAON. The reference is shown with an update date of 10/17/01. Under 1st Feature – Return Outside Air Options, B Feature R/A Blower Config., *options E, F. and G show fans that can be operated independently with separate variable frequency drives (VFDs).*

Exh. F, ¶ 5 (emphasis added). Rather than submit the description AAON provided Huntair, Huntair waited until January 2006 (and after an August amendment had been entered resulting in allowance of the application). Exh. G. The sheet corresponding to the description AAON provided is, as obtained from the PTO files, practically illegible. See Exh. H.

After Huntair submitted the first batch of AAON brochures to the PTO, Mr. Hopkins addressed them in a second declaration. Exh. I. He attempted to explain away portions of the brochures (note he distinguished his invention as requiring at least six fan units rather than four; the claims *as issued* are not limited to six fan units or more). But he never described the presence of four fan units each with its own variable frequency drive (VFD) or their independent controllability and, after AAON submitted the additional information quoted above, he never bothered to comment on it.

Huntair never submitted any information about the Governair[3] device to the PTO. Moreover, throughout the prosecution, Huntair withheld information about prior art even when disclosing prior art. As mentioned, twice, AAON submitted information describing the AAON device; twice, Huntair submitted less than all the information it had received from AAON. Exh. D-G. Three times, another competitor, Acoustiflo, sent information describing prior art and how

---

[2] The Exhibits show that AAON submitted two Protests to the PTO. Neither of these was entered, so they are not a part of the patent prosecution file in connection with the patents in suit. They were, however, served on Huntair.

[3] Well before prosecution of the applications was completed, Governair was owned by the same company that owned Clean-Pak and Huntair. *See* Exh. N.

individual references were pertinent to specific claims then pending. Exh. J-L. Acoustiflo's counsel explained:

> Presented below is a claim-by-claim indication of references that are material to the examination of the specified claim, in addition to an indication of column and line numbers of particularly relevant disclosure. As such, this letter itself is also material to the examination, and should also be forwarded to the USPTO along with the supplied references.

Exh. J, page 1, third paragraph. *See additionally* Exh. K, L. Huntair cited the references it was provided, but did not explain the column and line indication, the correlation of the column and line explanation with the then-pending claim element, or any other aspect of the art, and it did not provide the letters of explanation to the PTO. Consequently, the PTO received a plethora of prior art references and no explanation of their pertinence.

Huntair has yet to produce the bulk of its documents, and it is believed that files containing the prior art disclosed in foreign prosecution or other prosecution have not been provided. For example, prosecution of a Japanese patent application resulted in the location of certain Japanese prior art before either patent issued and before the '046 patent prosecution on the merits was completed. None of this art was cited to the PTO.

At least the AAON and Governair devices were material to prosecution of the application, as ClimateCraft fully explained to Huntair when it served its invalidity contentions. The AAON device contains four closely positioned fan units and further contains multiple, variable frequency drives, one for each fan unit. This permits a controller to independently control the individual fan units, whether to allow them to be turned on and off or to control their respective fan speeds. The Governair device is similarly material. ClimateCraft is still completing discovery on the structure and function of these devices. As ClimateCraft explained, these devices are invalidating. *See generally* ClimateCraft's Initial Invalidity Contentions, Exh.

M, at pages 6-9 (explaining the elements of the AAON and Governair devices) and at Exh. B and C to the Invalidity Contentions (providing claim charts).

As for intent, there is more than sufficient evidence of it, and the evidence comes straight from the prosecution history and the conduct described above. Throughout the prosecution of each patent in suit, a pattern emerges. Huntair filed its patent application and disclosed two principal embodiments of air handlers: the first, showing a "fan array" embodiment, describes professed advantages of using multiple fans in the place of a single, large fan in large air handling applications. The second, a "peak efficiency" embodiment, asserts that a "peak efficiency" control system could be fitted to the "fan array" embodiment to control the fan units to run at "substantially peak efficiency." Huntair attempted to get a patent covering the "fan array" embodiment, but it failed. The PTO rejected claims not requiring the "peak efficiency" control system. In Huntair's original application, it submitted its alleged prior art search (we don't yet know what information it provided to a searcher to get those alleged search results) and Mr. Hopkins' statement that his "invention goes against conventional wisdom pertaining to the use of multiple fans and spacing of multiple fans in air handling systems." Huntair eventually received the two patents in suit, with each claim requiring some kind of control for "peak efficiency." As we will see soon enough, Huntair disclosed nothing about how to actually accomplish this alleged control.

Even now, Huntair persists. ClimateCraft's accused products do not permit independent control of the individual fan units in any way. Controlling them for "peak efficiency" as described by the patents in suit is physically impossible. Huntair's goal is not to enforce valid patents, but to drive competitors out of the industry if they offer any product having multiple fans in the place of a single, large fan in large air handling applications.

As prosecution of the application continued, the situation regarding the alleged infringement of the application claims changed. Specifically, that infringement terminated when Clean-Pak and Huntair came under common ownership. Yet, even though this changed circumstance disqualified the Huntair application from the expedited PTO examination that it had gained by the petition to make special, Huntair never told the PTO about the change.

> B.  Huntair Failed to Inform the PTO that the Infringement Used to Gain Special PTO Treatment of the Application No Longer Existed

As explained above, Huntair was able to gain special expedited treatment for its patent application by representing to the PTO that the claims of its application were being infringed by Clean-Pak. But when Huntair and Clean-Pak came under common ownership, Exh. N, that infringement ceased, and the Huntair application lost its entitlement to special status. See 35 U.S.C. § 271(a) (infringement occurs only when activity occurs "without authority" of the patent owner).

Yet Huntair never informed the PTO of this changed circumstance, and continued to benefit from special PTO treatment as long as its application remained pending. This failure to inform the PTO about the changed circumstances with regard to infringement constituted inequitable conduct. *See Fox Industries, Inc. v. Structural Preservation Systems, Inc.*, 922 F.2d 801, 803 (Fed. Cir. 1990) (the duty of candor "extends through the patent's entire prosecution history").

Huntair repeatedly withheld and/or misrepresented material information about the prior art from the U.S. Patent and Trademark Office ("PTO") in an effort to deceive the PTO. While discovery will likely yield more information, the foregoing is known now, and more than supports a finding of inequitable conduct.

6

## C. A Patent Applicant's Failure to Cite the Most Relevant Prior Art to the PTO Can Constitute Inequitable Conduct

In addition to the usual body of law applicable to a situation where the patentee withholds material information from the PTO in an effort to deceive it, several decisions have held that inequitable conduct can occur as a result of false statements or non-disclosures *in a petition to make special*. One early decision was *Monolith Portland Midwest v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288, 296-97 (9th Cir. 1969). There, a patentee filed a petition to make special on grounds of infringement. In the petition, an employee of the patentee made false statements about when the infringement had been discovered. The Ninth Circuit found a serious breach of duty to the Patent Office and upheld an attorney fee award against the patentee.

Another petition to make special case is *General Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405 (Fed. Cir. 1994). In its petition, the patentee sought expedited examination on grounds of infringement. The petition included a statement that a prior art search had been conducted, when in fact no such search had been conducted. On this record, the Federal Circuit upheld an inequitable conduct finding. 19 F.3d at 1412.

In *General Electro*, the patentee contended that it *had* conducted a prior art search because its lawyer had searched his own files for prior art, and had asked several individuals in the industry about prior art designs. 19 F.3d at 1407. On the other hand, the defendant contended that "prior art search" meant a search for prior art by an attorney or professional searcher in the PTO files, or the equivalent of such a search done by computer. 19 F.3d at 1407. The *General Electro* Court ruled that "[a] careful and thorough prior art search requires more than looking in one's files and talking to one's colleagues. Such a search normally requires going beyond one's internal sources of information and utilizing external sources. 19 F.3d at 1410.

7

Another case involving a petition to make special on grounds of infringement is *Monon Corp. v. Stoughton Trailers Inc.*, 40 USPQ2d 1625 (N.D. Ill. 1996). There, a patent applicant submitted an information disclosure statement in support of the petition, but failed to disclose both a prior sale and a material prior patent ("the Jones patent"). On this record, the court found inequitable conduct. Discussing the patent applicant's duty with regard to the search, the *Monon* court ruled that "the applicant must make an extra effort to look for and produce all relevant prior art." 40 USPQ2d at 1628.

> **D. A Patent Applicant's Failure to Inform the PTO of Changed Circumstances that Disqualify the Applicant from Special PTO Treatment Can Constitute Inequitable Conduct**

Another potential ground for a finding of inequitable conduct under these facts arises where the alleged infringement used to justify a petition to make special ceases while the application is being prosecuted. The Federal Circuit has emphasized that the duty of candor "extends through the patent's entire prosecution history." *Fox Industries, Inc. v. Structural Preservation Systems, Inc.*, 922 F.2d 801, 803 (Fed. Cir. 1990). If, because of changed circumstances, a patent applicant is no longer entitled to the expedited examination that he secured through a petition to make special, then the duty of disclosure would require that applicant to inform the Office of those changed circumstances.

An analogous "changed circumstances" situation involves a change in small entity status that disqualifies an applicant from benefitting from reduced filing fees, or disqualifies a patentee from the benefit of reduced maintenance fees. The Federal Circuit has ruled that a patent applicant's failure to inform that Office of such changed circumstances can constitute inequitable conduct. *See Ulead Systems, Inc. v. Lex Computer & Management Corp.*, 351 F.2d 1139, 1146 (Fed. Cir. 2003) ("we hold that our traditional standard for inequitable conduct is applicable to PTO proceedings involving the payment of maintenance fees as a small entity ...").

*DaimlerChysler AG v. Feuling Advanced Technologies, Inc.*, 276 F.Supp.2d 1054 (S.D. Cal. 2003) involved a patent applicant who qualified for small entity status when the application was filed. At a later time, however, the applicant licensed his invention to a large entity, and thus became disqualified to benefit from small entity status. The applicant nonetheless continued to pay the small entity filing and maintenance fees for the next seven years, never informing the PTO of the changed circumstances. 276 F.Supp.2d at 1057-58. On these facts, the court found inequitable conduct. The court noted that it would not have found the patent unenforceable based on the maintenance fee underpayment alone, "since failure to pay appropriate fees does not directly relate to patentability." But because there were other instances of inequitable conduct as well, the patent was found unenforceable. 276 F.Supp.2d at 1062.

The maintenance fee cases reinforce the conclusion that a patent applicant is under a duty to inform the PTO of any changed circumstance that disqualifies an applicant from some benefit during the prosecution process -- such as expedited examination or reduced filing fees. Failure to inform the PTO of such a changed circumstance, if intentional, can constitute inequitable conduct.

Finally, the pattern of conduct must be considered. Throughout the prosecution, Huntair, rather than show candor in dealing with the PTO, did its absolute best to withhold information or otherwise make it as difficult as possible for the Examiner to appreciate the prior art. All the while, the Examiner, relying on Huntair's assertions that it had searched the art, that it knew the art, and that it needed expedited consideration of its application because of infringement by Clean-Pak, worked quickly to consistently respond within very short timeframes.

9

**III.     Huntair's Motion Should Be Denied**

By its Motion, Huntair seeks not only to strike the allegations brought, but to bar amendment to those allegations to overcome the issues of which Huntair complains.  In support, Huntair cites numerous cases commenting on the abundance of weak allegations of inequitable conduct.  These are hardly apposite to this case, where the factual record is so strong.  There is no doubt Huntair's conduct before the PTO was inequitable.

While the law does indeed require inequitable conduct to be pleaded with particularity, Huntair overstates what its proffered cases actually stand for.  Most of the cases Huntair cites address the required proofs to prevail on an inequitable conduct charge, examining the evidence adduced at trial and determining whether it is sufficient to prove inequitable conduct.  At least one actually undercuts the relief Huntair seeks by its Motion.  For example, the *Catalina Mktg. v. Coolsavings.com, Inc.* case, No. 00 C 2447, 2003 WL 215424878, *1 (N.D. Ill. Jul. 3, 2003) expressly rejects the patentee's effort to prevent the defendant from repleading its counterclaim, noting "the merits of [the] counterclaim are not to be decided at the pleading stage."  Leave was given to replead.

Given the plethora of facts supporting the inequitable conduct claim and the fact that their existence was known to Huntair, ClimateCraft set forth a succinct allegation in an effort to capture all of them.  Should the pleading be deemed deficient, ClimateCraft should be permitted to amend, as follows.

## IV.  Alternatively, ClimateCraft Should be Permitted to Further Amend the Pleadings

Even if the Court found that ClimateCraft's pleadings lacked the requisite specificity, ClimateCraft should be permitted to amend again to overcome these defects.  The information supporting the additional allegations comes straight from Huntair's files.

Were it necessary, ClimateCraft would further amend the pleading to insert the following specific facts:

> These misrepresentations and/or instances of knowledge withheld include at least the following:  (1) the named inventor, Mr. Hopkins, stated by declaration to the PTO that his invention goes against conventional wisdom pertaining to the use of multiple fans and spacing of multiple fans in air handling systems despite the existence of commercially available prior art devices, such as those sold by AAON and Governair; (2) Mr. Hopkins failed to disclose to the PTO with the filing of the application the existence of commercially available prior art devices, such as those sold by AAON and Governair; (3) Mr. Hopkins and his attorney withheld from the PTO that the AAON devices were provided with separate VFDs on each fan unit and thereby permitted independent control; (4) Mr. Hopkins failed to disclose to the PTO the existence of the Governair prior art device at any time; and (5) Mr. Hopkins and his attorney failed to tell the PTO the changed circumstances when Clean-Pak and Huntair became commonly owned, which thereby removed the infringement that supported the initial Petition to Make Special.  These facts were material to the prosecution and were withheld from the PTO with intent to deceive.

Huntair would have this Court deny leave to further amend.  This is inappropriate. Certainly, there was no undue delay, there is no prejudice to Huntair, there is no bad faith on ClimateCraft's part and the pleading is far from futile.  *See, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Any implication that ClimateCraft is sandbagging is ridiculous:  *see* ClimateCraft's invalidity contentions, Exh. M, and compare to Huntair's infringement contentions, attached thereto as Exh. A.   Huntair's infringement contentions, rather than offer actual proof of infringement, baldly assert that the required "array controller for controlling" the fans "by strategically turning selective ones [of the fan units] on and off" is infringed because a PLC "may constitute" such a device.

11

**V.      Conclusion**

The facts known to date more than support an inequitable conduct charge in this case. Even if the Court were to find that ClimateCraft's pleadings were not sufficiently detailed, no prejudice to Huntair has occurred, as the information supporting these pleadings comes straight from Huntair's files. The Court should deny the motion or, in the alternative, enter an order permitting ClimateCraft to amend as set forth in this brief.

                                            Respectfully submitted,

Dated: May 28, 2008

                                            /s/ Charles C. Kinne
                                            Charles C. Kinne
                                            KINNE IP GROUP
                                            1240 Iroquois Avenue, Suite 204
                                            Naperville, Illinois 60563
                                            Telephone: 630.904.0940
                                            Facsimile: 888.887.7158
                                            ckinne@kinnelaw.com

                                            *Attorney for ClimateCraft, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing **CLIMATECRAFT'S OPPOSITION TO HUNTAIR'S MOTION TO STRIKE PLEADINGS** was served by ECF upon:

David T. Pritikin
Richard T. McCaulley Jr.
Stephanie P. Koh
Nicole E. Kopinski
Benedict F. Frey
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000
dpritikin@sidley.com
rmccaulley@sidley.com
skoh@sidley.com
nkopinski@sidley.com
bfrey@sidley.com

and

Carrie W. Cotter
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
(415) 772-1200
ccotter@sidley.com

this 28th day of May, 2008.

                                              /s/ Charles C. Kinne
                                        *Attorney for ClimateCraft, Inc.*