# Exhibit L

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HUNTAIR, INC. | ) |
| | ) |
| Plaintiff, | ) Case No. 07 C 6890 |
| | ) |
| vs. | ) Hon. Judge Coar |
| | ) |
| CLIMATECRAFT, INC. | ) Magistrate Judge Denlow |
| | ) |
| Defendant. | ) |

## RESPONSE AFFIDAVIT REGARDING FAN ARRAY CLAIM CONSTRUCTION

STATE OF ILLINOIS    )
                     ) SS:
COUNTY OF DUPAGE     )

I, Albert V. Karvelis, hereby state under oath as follows:

1. I have reviewed the expert report submitted by Dr. Rice, and the brief submitted by Climate Craft. While I do not quarrel with certain of the technical and scientific points raised by Dr. Rice, I do not believe that they are relevant to the present dispute.

2. A person skilled in the art would be a person with a degree in Mechanical Engineering and actual hands on experience with HVAC systems, including air-handlers.

3. While Dr. Rice recites a standard that includes experience in the field, it does not appear that he applies that standard properly in his analysis of the patents in suit.

4. There are a number of considerations that go into designing an HVAC system. The patent specifications teach that it is possible, and advantageous, to replace larger fans with an array of smaller fans. The patent specification provides examples of such designs. For example the patent discusses replacing a 50 horsepower motor with fourteen 2 horsepower motors for a given system.

5. Typically a system is designed around a given set of design conditions or parameters (see, for example, '046 patent, col. 8, lines 21-23). Once the system is installed, however, the fans and motors that are going to be utilized in the system are installed, and they cannot be changed without substantial effort, time and expense.

6. The installed system is typically capable of handling the "worst case scenario" for the building, plus usually some safety factor for unanticipated demands that might be placed on

1

the system at a later time. Even a fan array would typically be designed with such excess capacity.

7.  Once the system is installed, however, it must meet the demand in the building at various points in time. Given that the system is designed for the worst case scenario, plus some excess capacity built in, the system on its first day will almost always be running at some percentage of the capability of the system. If such a system is running on a single fan, typically that unit will be dialed back, and it will run at some percentage of the rated capacity of the motor.

8.  When a fan array is installed, however, the fan units that are installed provide flexibility in how the demand in the building is met. Rather than running all of the fans in the array, some can be shut down, and the remaining fan units can be operated at speeds closer to their design parameters. This allows the array to meet the demand in the building with the motors at or near their fully loaded capacity, thus consuming less power compared to the array with all fans running at reduced speed. This is the type of "efficiency" that is referred to in the patent claims.

9.  Climate Craft takes issue with the fact that certain claim terms are not definite within the meaning of the patent laws. While I am not a patent lawyer, I have an understanding of the law of indefiniteness, and in my opinion a person skilled in the art as described above, and as described by Dr. Rice, would not have difficulty understanding the meaning and boundaries of the various claim elements which seem to concern Climate Craft.

10. A person skilled in the art would understand the term "substantially peak efficiency" to mean nearly peak efficiency. While there is no precise bright line limit for this term as sought by Climate Craft, the limit would be somewhat dependent on the components chosen by the designer for a particular application, and the term therefore does not lend itself to a numerical limit. A person skilled in the field, however, would be able to understand the term in the context of the claims and be able to determine a suitable range for the system that they had installed. Importantly, once the system is installed a person skilled in the art would understand that motors and fans are not going to be physically removed and changed. Rather, the fan array allows the user to respond to the needs of the building more precisely by using an appropriate number of fan units operating in an efficient manner, using a decreased amount of energy necessary to meet the demand.

11. A person skilled in the art would likewise have no difficulty understanding the terms "control system" and "array controller" in the context of the patents. As pointed out in my earlier report a person skilled in the art would understand that the control system could be manual or automatic. It could take a number of forms, all of which would be readily understood and easily implemented by a person skilled in the art as described above. When read in the context of the claims, a person skilled in the art would have no problem in identifying the class of components that could be used to implement these terms. Some exemplary systems that come to mind could include a series of switches, a VFD, a series of limit controls, or a programmable PLC (or combinations of these components) depending on the needs of the particular system. It would be straightforward for a person skilled in the art to implement the control manually or automatically. In the PLC, depending on the particular implementation, the user could set cut off

2

points to automatically turn off fans when, for example, speeds decrease below a defined limit, or increase above a defined limit.

12.     Furthermore, the patents disclose sufficient information to allow a person skilled in the art to implement a manual or automatic control strategy to implement these claim elements. Given the information disclosed in the patents a person skilled in the art could, with little or no difficulty, come up with a number of suitable strategies to meet the demand in the building while operating the fan array with the fan array operating at nearly peak efficiency.

FURTHER AFFIANT SAYETH NOT.

Executed on July 21, 2008.

_____
Albert V. Karvelis

STATE OF ILLINOIS

COUNTY OF DUPAGE

Signed and sworn to before me on this 21st day of July, 2008 by Albert V. Karvelis.

Notary's Seal

_____
Notary Public
My Commission expires:

"OFFICIAL SEAL"
Amy E. Baehr
Notary Public, State of Illinois
My Commission Exp. 08/01/2010